```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN

GREGORY G. POGAN,                      )
                                       )
             Plaintiff,                )
                                       )
       v.                              )    Civil No. 2015-14
                                       )
M/V VENTURE PRIDE, VARLACK             )
VENTURES, INC.,                        )
                                       )
             Defendants.               )
                                       )
                                       )
```

APPEARANCES:

**Ryan C. Meade**
Quintairos, Prieto, Wood, & Boyer, P.A.
Miami, FL
    *For Gregory G. Pogan.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the motion of Gregory G. Pogan for default judgment against Varlack Ventures, Inc.

### I. FACTUAL AND PROCEDURAL HISTORY

Gregory G. Pogan ("Pogan") owns the M/V Good Grief (the "Good Grief"), a 25 foot Mako power boat. Varlack Ventures, Inc. ("Varlack") owns the M/V Venture Pride (the "Venture Pride"), a 30 meter, 86-ton passenger ship.

Around 7:00 P.M. on May 6, 2012, Pogan moored the Good Grief in Cruz Bay on St. John, United States Virgin Islands.

Before departing the Good Grief, Pogan pumped it dry and inspected it, confirming that there were no leaks or other issues.

Around 12:00 A.M. that night, the Venture Pride attempted to dock in Cruz Bay. While maneuvering, the Venture Pride struck the Good Grief. After the allision, the Good Grief capsized.

The Good Grief was later taken to shallow water and righted. The Good Grief sustained structural damage. The Good Grief's electrical system and both outboard engines were also damaged.

On March 3, 2015, Pogan commenced an *in rem* action against the Venture Pride. On April 9, 2015, Pogan filed an amended complaint that named Varlack as a defendant. Pogan alleged that the Venture Pride was operated negligently when it struck the Good Grief. Pogan sought a judgment *in rem* against the Venture Pride and a maritime lien on the Venture Pride.

On June 3, 2015, the Clerk of Court issued a summons for Varlack. On June 29, 2015, Pogan filed proof of service of process on Varlack. The affidavit of service indicated that Varlack was served on June 4, 2015, by delivering a copy of the summons and complaint to Delrise Varlack, one of Varlack's officers.

Varlack has not answered the Complaint or otherwise appeared in this action. On June 29, 2015, Pogan moved for an entry of default against Varlack. On July 14, 2015, the Clerk of Court entered default against Varlack.

Thereafter, Pogan moved for default judgment against Varlack. On March 28, 2017, the Court denied that motion.

On August 17, 2017, Pogan filed a second motion for default judgment. In the second motion for default judgment, Pogan asserts that he is entitled to $52,833.38 in damages. In support of that assertion, Pogan filed an affidavit from Mathias Wiebracht ("Wiebracht"). Wiebracht "provide[s] vessel marketing, sales, and purchasing expertise and assistance in the Caribbean and New Jersey as well as expert witness testimony." ECF No. 20, Exh. 1 at ¶ 1. Weiebracht estimated that "the fair and reasonable replacement value of [the Good Grief] at the termination of its voyage on May 6, 2012[,] was $52,833.38 ($25,000.00 for the hull and $27,833,38 for the engines)." *Id.* at ¶ 6.

## II.  **DISCUSSION**

Federal Rule of Civil Procedure 55(b)(2) allows courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. V.I. Bd. Of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). In

considering a motion for default judgment, the factual allegations in the complaint are treated as conceded by the defendant, except those relating to the amount of damages. *DIRECTV, Inc. v. Pepe,* 431 F.3d 162, 165 (3d Cir.2005); *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1149 (3d Cir.1990). Default judgment is only appropriate where a plaintiff's well-pleaded facts, taken as true, demonstrate that the plaintiff is entitled to relief. *See, e.g.*, *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 n. 23 (2d Cir. 2011) ("Most of our sister circuits appear to have held expressly that a district court may not enter a default Judgment unless the plaintiff's complaint states a valid facial claim for relief."). "But while a defaulted defendant is deemed to 'admit the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975))

Even where a plaintiff is entitled to default judgment, the plaintiff is still "required to prove the amount of damages that should be awarded." *Oberstar v. F.D.I.C.,* 987 F.2d 494, 505 (8th Cir.1993). Instead of relying on the allegations in the

complaint, the Court must conduct an inquiry to ascertain the amount of damages. *See* Fed. R. Civ. P. 55(b) ("The court may conduct hearings ... when, to enter or effectuate judgment, it needs to ... determine the amount of damages ...."); *see also United States v. Di Mucci,* 879 F.2d 1488, 1497 (7th Cir.1989) (explaining that a default judgment may be entered without an evidentiary hearing on damages so long as the amount of damages is "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits"); *Adolph Coors Co. v. Movement Against Racism and the Klan,* 777 F.2d 1538, 1544 (11th Cir.1985) ("Damages may be awarded [in a default judgment] only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." (internal quotation omitted)).

A motion for entry of default judgment must also contain evidence of the following: (1) that all pleadings were validly served upon the defendant; (2) that the defendant has not appeared; (3) that default was entered; (4) that the defendant is not an infant or incompetent; (5) an affidavit of non-military service; and (6) the amount of judgment and how it was calculated. *See Bank of Nova Scotia v. Abdallah*, No. CV 20012-0033, 2014 WL 2976232, at *3 (D.V.I. July 1, 2014). In addition,

the Court must consider three factors when determining whether to grant a default judgment: "(1) [the] prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

### III. <u>ANALYSIS</u>

**A. Whether Pogan is Entitled to Judgment**

"Negligence in admiralty law is essentially coextensive with its common law counterpart . . . ." *In re Frescati Shipping Co.*, 718 F.3d 184, 207 (3d Cir. 2013). Thus, a plaintiff asserting a maritime negligence cause of action must show "(1) 'the existence of a duty required by law which obliges the person to conform to a certain standard of conduct'; (2) 'a breach of that duty by engaging in conduct that falls below the applicable standard or norm'; (3) a resulting loss or injury to the plaintiff; and (4) 'a reasonably close causal connection between the offending conduct and the resulting injury.'" *Id.* (alterations omitted) (quoting 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, §§ 5-2, at 252 (5th ed.2011)); *see also Sevison v. Cruise Ship Yours, Inc.*, 37 V.I. 231, 236 (D.V.I. 1997) ("As maritime tort claimants, of course, the plaintiffs must still prove the essential elements of a negligence claim,

including (1) existence of a duty, (2) breach of that duty, (3) proximate cause and (4) damages.").

"In admiralty cases, the standard of care is established by statutes or regulations, maritime custom, or by the general principles of negligence law." *St. James Stevedoring Partners, LLC v. Motion Navigation Ltd.*, No. CIV.A. 13-541, 2014 WL 3892178, at *4 (E.D. La. Aug. 6, 2014) (footnote omitted). Under the general principles of negligence, mariners are expected to exercise "'human skill and precaution, and a proper display of nautical skill,'" i.e., "reasonable care under the circumstances." *See Weyerhaeuser Co. v. Atropos Island*, 777 F.2d 1344, 1347 (9th Cir. 1985) (quoting *The Louisiana*, 70 U.S. 164, 173 (1865)); *see also* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 14-2 (5th ed. 2011) ("The test and standard for a finding of negligence is reasonable care under the circumstances, or whether judged against the standard of good and prudent seamanship, the collision could have been prevented by the exercise of due care." (footnotes omitted)).

Significantly, maritime tort claimants may rely on several presumptions in proving the elements of a tort claim. Relevant here, under the *Oregon* Rule,[1] "there is a presumption that a

---

[1] The *Oregon* Rule is derived from *The Oregon*, 158 U.S. 186 (1895).

moving vessel which strikes a stationary vessel is at fault." *Cliffs-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke*, 947 F.2d 83, 86 (3d Cir. 1991) (citing *The Oregon*, 158 U.S. 186, 197 (1895)). "This presumption operates to shift the burden of producing evidence and the burden of persuasion onto the moving vessel." *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 503 (5th Cir. 1994); *see also Self Towing, Inc. v. Brown Marine Servs., Inc.*, 837 F.2d 1501, 1503 (11th Cir. 1988) ("It is a well-established rule that a moving vessel which strikes a stationary vessel is presumed to be at fault and has the burden of proving otherwise."). "The moving ship may rebut the presumption by showing, with a preponderance of the evidence, that the collision was the fault of the stationary object, that the moving ship acted with reasonable care, or that the collision was an unavoidable accident." *Amer. Petrofina Pipeline Co. v. M/V Shoko Maru*, 837 F.3d 1324, 1326 (5th Cir. 1988).

In his amended complaint, Pogan alleged that, at the time of the allision, the Good Grief was moored in Cruz Bay and stationary. Pogan further alleged that the Venture Pride struck the Good Grief while the Venture Pride was maneuvering to dock in Cruz Bay. Taking these allegations as true, the *Oregon* Rule creates a presumption that the Venture Pride breached its duty

of reasonable care under the circumstances. *See Cliffs-Neddril Turnkey Int'l-Oranjestad*, 947 F.2d at 86.

Pogan also alleged that prior to impact, the Good Grief was structurally sound and had no reason to capsize. Immediately after the it was struck by the Venture Pride, the Good Grief capsized. Taken as true, these allegations adequately demonstrate that the Venture Pride was the cause of the damage to the Good Grief. Accordingly, the Court holds that the well-pleaded facts in Pogan's complaint demonstrate that Varlack is liable for Pogan's injuries.

### B. Whether Default Judgment is Appropriate

A district court has limited discretion in fashioning an award for damages in a default judgment. Federal Rule of Civil Procedure 54 ("Rule 54") provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Third Circuit has not interpreted what it means for a judgment to "differ in kind from, or exceed in amount, what is demanded in the pleadings." Indeed, this provision is open to multiple interpretations. *See, e.g.*, *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132–33 (4th Cir. 2000) (explaining that "Fed. R. Civ. P. 54(c) and its many state analogues have led to a dizzying array of judicial decisions addressing the precise meaning of

the requirement that a default judgment may not 'exceed in amount that prayed for in the demand for judgment.'"). This is especially so where a complaint does not demand a specific amount of damages. *See Appleton Elec. Co. v. Graves Truck Line*, Inc. 635 F.2d 603, 610 (7th Cir. 1980) (declining to reach "the interesting question" of whether "an unstated amount [can] be exceeded").

    The purpose of Rule 54(c)'s limitation on default judgments "is that a defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." *Silge v. Merz*, 510 F.3d 157, 159-62 (2d Cir. 2007) (quoting 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure,* § 2663 (1998)). For this reason, even the most liberal interpretation of Rule 54(c) requires at least "[g]eneral allegations of damages in a prayer for relief." *Anunciation v. W. Capital Fin. Servs.*, 97 F.3d 1458 (9th Cir. 1996) (unpublished opinion); *see also Silge*, 510 F.3d at 159 ("Whatever its import in other contexts, this formulaic language cannot substitute for the meaningful notice called for by Rule 54(c), which anticipates that defendants will look to the demand clause to understand their exposure in the event of default."). Consistent with the purpose of Rule 54(c), several

courts have looked past a deficient demand for relief where the defendant was served a copy of the motion for default judgment. *See Appleton Elec. Co.*, 635 F.2d at 611.

Pogan's prayer for relief asks the Court to

    a. immediately issue a warrant for the arrest of the M/V VENTURE PRIDE;
    b. notify all persons claiming any interest in the M/V VENTURE PRIDE and order them to appear and answer the matters aforesaid;
    c. enter judgment *in rem* against the M/V VENTURE PRIDE in favor of POGAN for the full value of the M/V VENTURE PRIDE;
    d. award to plaintiff court costs, and other costs reasonably incurred in this action (including but not limited to fees for substitute custodian, dockage, and insurance required by the U.S. Marshal Service);
    e. enter judgment declaring that plaintiff has a valid and existing maritime lien on the M/V VENTURE PRIDE for the full value of the M/V VENTURE PRIDE , which is senior to any other liens or claims whatsoever, except any preferred maritime liens which may be asserted against the M/V VENTURE PRIDE and so proved in this action, and granting plaintiff a judgment *in rem* against the M/V VENTURE PRIDE; together with other costs reasonably incurred in this action (including but not limited to fees for substitute custodian, dockage, and insurance required by the U.S. Marshal Service);
    f. order that the M/V VENTURE PRIDE be sold by the U.S. Marshal to pay and satisfy said judgment in full, subject to valid and existing preferred liens; and
    g. award such other and further relief as the court deems just and proper.

ECF No. 5 at 4.

The complaint does not specify the amount of the damages sought. Further, the type of relief Pogan sought in his

complaint--a judgment *in rem* against the Venture Pride--differs from the type of relief he seeks through default judgment--money damages from Varlack. Ordinarily, that deficiency in the pleading would be insufficient to provide Varlack with notice of the amount at stake in this litigation.

However, on March 21, 2018, Pogan filed a return of service. The process server's affidavit appended to the return of service indicated that on February 27, 2018, Delrise Varlack was personally served a copy of Pogan's second motion for default judgment. That motion included Pogan's assertion that he was entitled to $52,833.38 along with an affidavit attesting to that amount. The motion and affidavit provided the precise amount demanded by Pogan, which put Varlack on notice of the exact amount at stake in this litigation. Varlack has not filed a response to that motion or otherwise appeared in this action. Because Varlack received notice of Pogan's requested relief, the Court holds that service on Varlack of the second motion for default judgment cured the deficiency in Pogan's demand for relief. *See Appleton Elec. Co.*, 635 F.2d at 611.

   **C. Damages**

In support of his asserted damages, Pogan filed an affidavit from Mathias Wiebracht ("Wiebracht"), a "representative of Maritime Yacht Sales" with "experience

operating in the maritime industry in the United States Virgin Islands." ECF No. 20, Exh. 1 at ¶¶ 1, 3. After researching sales of vessels similar to the Good Grief, Wiebracht concluded that the replacement value of the Good Grief's hull is $25,000 and the replacement value of the Good Grief's engines is $27,833.38, for a total of $52,833.38. Pogan has carried his burden of establishing his entitlement to these damages. See, e.g., *Meyer v. City of Cincinnati*, 943 F.2d 52 (6th Cir. 1991) ("Under a plain reading of Rule 55(b)(1), plaintiff's burden is to establish that the damages requested are such that may be computed to a sum certain and to present an affidavit computing damages.").[2] Accordingly, judgment will be entered in favor of Pogan in the amount of $52,833.38.

    An appropriate judgment follows.

                                              S\_____
                                                 **Curtis V. Gómez**
                                                 **District Judge**

---

[2] Pogan also seeks prejudgment interest pursuant to 11 V.I.C. § 951 ("Section 951"). Section 951 provides that an award of prejudgment interest is permitted on "all monies which have become due." 11 V.I.C. § 951(a)(1). "Award is authorized only where the amount due is in money and therefore easily ascertainable." *VF Dev. v. Greaves*, No. CIV. 2009-138, 2011 WL 4500295, at *4 (D.V.I. Sept. 27, 2011). "[S]ection 951(a) is not a proper mechanism for seeking prejudgment interest arising from a non-contractual tort." *Bookworm, Inc. v. Tirado*, No. CIV. 538/1997, 2002 WL 1765782, at *3 (Terr. V.I. July 1, 2002).